UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| SAMUEL D. HARRIS ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5:18-cv-491-DCR-CJS |
| ) | |
| V. ) | |
| ) | |
| DR. CLIFFORD and ) | **REPORT AND RECOMMENDATION** |
| SHELLY C. VOTAW, ) | |
| ) | |
| Defendants ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Motion for Summary Judgment filed by Defendants Dr. Angela Clifford, M.D., and Shelli Conyers-Votaw, A.R.N.P. (R. 32). Plaintiff has filed his Response (R. 40; *see* R. 39), and Defendants have filed a Reply (R. 41). Having all relevant documents before the Court, the matter is ripe for consideration. The Motion has been referred to the undersigned for preparation of a Report and Recommendation. (R. 14). 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it will be recommended that Defendants' Motion for Summary Judgment be granted.

I.   **FACTS**

At the time of the factual circumstances giving rise to this action, Plaintiff Samuel D. Harris ("Plaintiff" or "Harris") was an inmate confined at the Northpoint Training Center in Burgin, Kentucky. (*See* R. 1). Proceeding *pro se*, Harris filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights to medical care and treatment. (*Id.*). Specifically, Harris claims that Dr. Clifford and ARNP Shelly C. Votaw have been deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment of the United States

1

Constitution, by failing to provide adequate medical care and treatment to him relative to a stroke he sustained. (*Id.*).

In his Complaint, Plaintiff alleges that on September 9, 2017, he "had a stroke" and went to the Medical Department at the Northpoint Training Center. (*Id.* at 2). He asserts that "instead of being treated for [a] stroke" he was sent back to his dorm. (*Id.*). He further alleges that during follow-up visits to the Medical Department, he was misdiagnosed and treated for "cerebral palsy" instead of a stroke. (*Id.*). Plaintiff does not specify how many or when these follow-up visits occurred. However, he alleges that in November 2017, he was finally taken to the University of Kentucky Albert B. Chandler Hospital where he received an MRI, which MRI revealed he had suffered a stroke. (*Id.*). Harris filed his Complaint on August 13, 2018 (*id.* at 1), claiming that Defendants were "deliberately [i]ndifferent" to his medical needs due to the alleged misdiagnosis of his stroke. (*Id.* at 2, 5). Specifically, he asserts that his constitutional rights were violated when he was misdiagnosed and received "the wrong treatment and medication" from September 9, 2017 through November 2017. (*Id.* at 2). Harris's Complaint seeks monetary relief of $1.5 million.

On May 7, 2019, Defendants filed a Motion for Summary Judgment. (R. 32; *see* R. 34). In the Motion, Defendants present two arguments. First, Defendants assert summary judgment is appropriate because Plaintiff failed to exhaust his administrative remedies against the Defendants as required by the Prison Litigation Reform Act. (R. 32, at 5-6). However, Defendants subsequently withdrew this exhaustion argument in their Reply. (R. 41, at 1 n.1). Second, Defendants argue they are entitled to summary judgment on the merits of Plaintiff's claim. (R. 32, at 6-9). Specifically, they offer that Plaintiff's medical records objectively establish that Plaintiff did receive adequate medical treatment, and even if the treatment was not adequate, there is no

2

evidence to establish that Defendants acted with the requisite intent as required by a medical indifference claim brought pursuant to 42 U.S.C. § 1983.

Defendants further assert that Plaintiff "has a misunderstanding of the timeline of the events of his medical care[.]" (*Id*. at 9). Defendants have filed several of Plaintiff's medical records in support of their Motion for Summary Judgment. (R. 34). Review of Plaintiff's medical records reveals that on September 9, 2017 Plaintiff was first seen by ARNP Votaw at sick call, complaining that he could not talk. (*Id*. at 9). ARNP Votaw noted that Defendant's voice was "raspy but legible" and reported no drooping of the face. She ordered Plaintiff to return to his dorm and return to the Medical Department in a couple of hours to reassess. (*Id*.).

On September 10, 2017 Plaintiff was again seen by ARNP Votaw, reporting symptoms of a sore throat, numbness of hands, and his "vision blurring at times[.]" (*Id*. at 8). However, Harris denied that he was experiencing the numbness and blurred vision on the day of his visit. (*Id*.). ARNP Votaw obtained a throat culture of Harris, and diagnosed him with streptococcal pharyngitis, otherwise known as strep throat. (*Id*.). Harris was prescribed amoxicillin and ARNP Votaw ordered him to be seen by the medical provider the following day "regarding symptoms of numbness and blurred vision." (*Id*.). Harris was seen by Dr. Clifford on September 11, 2017. (*Id*. at 5). During this visit, Dr. Clifford noted Harris had facial paralysis "post facial, head [and] neck trauma" which apparently occurred three weeks prior to his visit, and requested an expedited MRI for Harris with and without contrast. (*Id*.). Plaintiff was also prescribed prednisone. (*Id*.).

Two days later, on September 13, 2017, Harris returned to see Dr. Clifford. (*Id*. at 4). There, Dr. Clifford noted that Plaintiff's facial paralysis persisted, although he reported feeling "a little better." (*Id*.). Contrary to Plaintiff's mistaken assertion that he was diagnosed with "cerebral palsy," Dr. Clifford diagnosed Harris with suspected Bell's palsy as an "effect of certain

3

complications of trauma[.]" (*Id*.). Dr. Clifford ordered a follow-up visit for Harris in two weeks, and further noted that Plaintiff was awaiting his MRI. (*Id*.). The medical records indicate that U.K. Hospital could not schedule an MRI until November, so Dr. Clifford ordered the "scheduler to call EMRMC" or Ephraim McDowell Regional Medical Center in Danville, Kentucky. (*Id*.).

Harris had an MRI at Ephriam McDowell Regional Medical Center the morning of September 27, 2017 and was seen by Dr. Clifford later that day where she noted that Harris's facial paralysis showed improvement from his last visit. (*Id*. at 3, 10). Harris was subsequently seen by Dr. Clifford to discuss the results of his MRI on October 10, 2017. (*Id*. at 2). The MRI revealed Plaintiff had an "acute right front lobe infarction," which Defendants concede was a stroke suffered by Plaintiff, but does not identify the date the stroke occurred. (*Id*. at 2, 3, 10; R. 32, at 4). Dr. Clifford then referred Plaintiff to Neurology, and ordered a follow-up visit in one month. (R. 34, at 2).

Plaintiff filed what was construed by the Court as his Response to Defendants' Motion for Summary Judgment. (R. 40). In his Response, Plaintiff admits that he was treated for Bell's palsy which he asserts is a sign and "after [e]ffect of a stroke[.]" (*Id*. at 1). He also concedes that he was mistaken regarding the month he actually received an MRI. (*Id*. at 3). However, Plaintiff appears to assert that he suffered a stroke prior or during his visits to the Medical Department. In essence, he argues that Defendants' misdiagnosis and delay in the correct treatment resulted in deliberate indifference, causing the "right side of [his] brain [to] never be right again[.]" (*Id*. at 2). Specifically, he argues that Defendants were deliberately indifferent when he was not taken to the hospital upon his first visit to the Medical Department nor was he immediately referred to a doctor. (*Id*. at 1-2). He also asserts that Defendants should have ordered an "E.K.G." when he complained

4

about facial paralysis. (*Id*. at 2). He states that this evidence demonstrates "medical malpractice." (*Id*. at 1).

Defendants then filed a Reply to Plaintiff's Response to their Motion for Summary Judgment. (R. 41). Dr. Clifford and ARNP Votaw argue that Plaintiff failed to produce any evidence to support his assertions and that, even if Plaintiff had provided evidence, his medical records establish that Defendants were not deliberately indifferent. (*Id*. at 1-2). Defendants further argue that Plaintiff has failed to offer any medical evidence to demonstrate that the delay in care resulted in identifiable harm. (*Id*. at 4-6).

## II.    STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing motions for summary judgment, the Court must view all facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). However, "[a] principal purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Accordingly, while the initial burden of showing there is no genuine issue of material fact is on the moving party, once the moving party has met its burden, the opposing party must demonstrate that there is sufficient evidence on which the jury could find for the nonmoving party. *Dominguez*, 555 F.3d at 549.

Moreover, "the moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only show–that is, point out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Hartsel v. Keys*, 87 F.3d 795, 799

5

(6th Cir. 1999) (quoting *Celotex*, 477 U.S. at 325) (internal quotations omitted). Once the moving party points out that there is an absence of evidence to support the nonmoving party's case, the trial court is not required to scour the record to establish that "it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the nonmoving party must affirmatively come forward with specific facts showing there is a "genuine issue for trial." *Matsushita Elec.*, 475 U.S. at 587. Summary judgment should be granted unless a court finds that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Brown v. Chapman*, 814 F.3d 447, 464 (6th Cir. 2016). Evidence that is "merely colorable, or is not significantly probative," is not sufficient to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Furthermore, while courts must apply "less stringent standards" for *pro se* plaintiffs, the lenient treatment generally accorded to *pro se* litigants has limits, and they are not entitled to take every case to trial automatically. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).

**III.   ANALYSIS**

    **A.   Deliberate Indifference**

Defendants' Motion for Summary Judgment argues that Plaintiff's deliberate indifference claim is meritless because Plaintiff's medical records establish Plaintiff did receive adequate medical treatment and there is no evidence Defendants acted with deliberate indifference. (R. 32, at 6-9). Additionally, Defendants argue that Plaintiff provided no evidence to support his allegation that his misdiagnosis and delay in receiving correct treatment resulted in identifiable harm. (R. 41, at 4-5).

To prevail on his deliberate indifference claim, Plaintiff must show Defendants each, acting under color of state law, deprived him of a right guaranteed by the Constitution or laws of the

6

United States. 42 U.S.C. § 1983. *See also Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) ("Each defendant's liability must be assessed individually based on his own actions"). The United States Supreme Court has held that a prisoner's access to reasonably adequate medical care is a right guaranteed by the Eighth Amendment's proscription on cruel and unusual punishment. *Estelle*, 429 U.S. at 104. This right "is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (citing *Estelle*, 429 U.S. at 104)). However, not every prisoner's claim of inadequate medical treatment states an Eighth Amendment violation, and a showing of negligence or medical malpractice fails to rise to the level of a constitutional deprivation. *Estelle*, 429 U.S. at 104-06. Instead, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id*. *See also Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Smith v. Franklin Cty.*, 227 F. Supp. 2d 667, 678 (E.D. Ky. 2002).

A constitutional deliberate indifference claim consists of both an objective and subjective component. *Farmer*, 511 U.S. at 834-45 (1994); *Comstock*, 273 F.3d at 702. The objective component requires a plaintiff to demonstrate that his deprivation was "sufficiently serious." *Farmer*, 511 U.S. at 834. A medical need is sufficiently serious if it has "been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's treatment." *Smith*, 227 F. Supp. 2d at 676 n.10 (internal citation and quotation marks omitted); *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897-98 (6th Cir. 2004).

The subjective component requires a plaintiff to demonstrate that the official, with a "sufficiently culpable state of mind," acted with deliberate indifference to a substantial risk that

the prisoner would suffer serious harm. *Comstock*, 273 F.3d at 703 (citing *Farmer*, 511 U.S. at 834); *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). To show the requisite intent, the plaintiff must "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he [or she] did in fact draw the inference, and that he [or she] then disregarded that risk." *Phillips*, 534 F.3d at 540 (quoting *Comstock*, 273 F.3d at 703).

A prisoner's claim does not rise to a constitutional deprivation on a showing that a plaintiff disagreed with the medical staff's diagnosis or would have preferred a different course of treatment. An inmate "is not constitutionally entitled to a particular course of treatment on his own assessment of its necessity" and "disagreement with the medical treatment received does not rise to the level of a constitutional violation." *Smith*, 227 F. Supp. 2d at 678. Disagreements over medical care cannot create a constitutional claim unless the medical care falls short of "contemporary standards of decency," *Estelle*, 429 U.S. at 103, or demonstrates an "unnecessary and wanton infliction of pain." *Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996). Moreover, "[a] plaintiff must show more than negligence or misdiagnosis of an ailment." *Kindoll v. Southern Health Partners, et al.*, No. 2:17-cv-84-DLB-CJS, 2019 WL 1409842, at *22 (E.D. Ky. Mar. 28, 2019) (citing *Winkler v. Madison Cty.*, 893 F.3d 877, 892 (6th Cir. 2018) (internal quotation marks omitted)). Where a prisoner has received medical attention and the dispute is over the adequacy of treatment, generally "a court will not second-guess the judgment of the medical professionals providing such treatment" absent a showing that it was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (internal quotation marks omitted).

      **B.**    **Plaintiff has not demonstrated he is entitled to proceed with his deliberate indifference claim.**

8

Defendants may prevail on their Motion for Summary Judgment if Plaintiff is unable to demonstrate a dispute of material fact with respect to the objective or subjective components of his claim and the undisputed facts show Defendants are entitled to judgment as a matter of law. Plaintiff's claim is premised upon Dr. Clifford's misdiagnosis and the Defendants' overall delay in treatment of his stroke. Plaintiff asserts that as a result of Defendants' action or inaction the "right side of [his] brain will never be right again" and that he "could have die[d]" because he was not immediately treated. (R. 40, at 2). In response, Defendants argue that Plaintiff has failed to offer medical evidence to demonstrate that he suffered from a detrimental effect caused by any delay in diagnosis or treatment, citing to the Sixth Circuit's opinion in *Napier v. Madison County*, 238 F.3d 739 (6th Cir. 2001).

As discussed above, the objective component is satisfied if a plaintiff demonstrates that his deprivation was "sufficiently serious." *Farmer*, 511 U.S. at 834. Whether a plaintiff can satisfy the objective component of a deliberate indifferent claim can depend on the nature of the medical need alleged. This analysis may be especially difficult when the medical circumstance alleged involves a stroke or other sophisticated medical condition.

For example, a medical need is sufficiently serious if it was "so obvious that even a lay person would easily recognize the need for medical treatment." *Burgess*, 735 F.3d at 476. Where a plaintiff's serious medical need is obvious, "it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Blackmore*, 390 F.3d at 899-900; *see also Bays v. Montmorency Cty.*, 874 F.3d 264, 268-70 (6th Cir. 2017) (distinguishing standards for obvious and non-obvious serious medical conditions where plaintiff asserts deliberate indifference based on delay in treatment). This type

9

of allegation is premised upon "delay alone in providing medical care creat[ing] a substantial risk of serious harm." *Kindoll*, 2019 WL 1409842, at *25 (citing *Blackmore,* 390 F.3d at 899).

Conversely, if a medical need is "minor or non-obvious" a prisoner may satisfy the objective standard by asserting a claim that is based upon the detrimental effect of a delay in treatment. *Id*. at *24-25. When a claim is based upon a delay in treatment of a minor or non-obvious medical need, a prisoner "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment" in order to satisfy the objective component. *Napier*, 238 F.3d at 743. This standard requires a plaintiff to provide "medical proof that the delay or inadequate treatment resulted in the serious medical condition to satisfy the objective component of the deliberate indifference inquiry." *Jackson v. Gibson*, No. 18-3982, 2019 WL 2755084, at *3 (6th Cir. July 2, 2019)*.* In other words, a plaintiff must prove "a causal connection between [a] [d]efendants' deliberate indifference and his injuries." *Wooler v. Hickman County, Kentucky*, No. 5:05-cv-247-R, 2008 WL 5412826, at *8 (W.D. Ky. Dec. 30, 2008) (holding generally that "proximate causation is an essential element of a § 1983 claim for damages") (citing *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994)); *see Jackson*, 2019 WL 2755084 at *3 (clarifying that "medical proof requirements . . . operate within the framework of the objective component" rather than as a separate element of a deliberate indifference claim).

Here, the arguments presented by Harris do not neatly fit into either the "obvious" medical need category, or the "minor or non-obvious" category. On the one hand, Harris asserts that it was Defendants' alleged delay in diagnosis and the appropriate treatment of a stroke, and the effect of that delay, which caused the "right side of [his] brain [to] never be right again . . . ." (R. 40, at 2). This argument appears to assert that his injury is based upon the effect of a delay in treatment for

10

a stroke, rather than asserting the delay alone created a substantial risk of harm. *See Kindoll*, 2019 WL 1409842, at * 25 (citing *Blackmore,* 390 F.3d at 899); *see, e.g., Wilson v. Carrol Cty.,* No. 12-cv-68-GFVT, 2014 WL 897077, at *7-8 (E.D. Ky. Mar. 6, 2014) (noting plaintiff's failure to submit medical evidence establishing how a delay in receiving treatment for a stroke negatively affected him). If Plaintiff's argument is interpreted such, then Plaintiff would be required to prove through medical evidence that it was the Defendants' asserted delay in diagnosing the stroke and appropriately treating Plaintiff that resulted in the alleged brain damage injury. *See Jackson*, 2019 WL 2755084, at *3. To put it another way, had Defendants appropriately and timely treated his stroke, he would not have suffered brain damage; that his stroke was treatable and the effects were preventable had Defendants timely treated him. This Harris has not done.

But Harris also argues that in order to proceed with his claim, he need only show that he was diagnosed with a stroke. (*Id*. at 1-2). He further asserts that he "could have die[d]" because Defendants did not send him to the hospital when he presented with symptoms of a stroke. (*Id*. at 2). Harris seems to claim with this argument that he presented with an obvious medical need, and that Defendants' delay alone in providing medical care for this obvious need created a substantial risk of harm to Harris. *Id*.; *See e.g., Wilson v. Johnson*, No. 3:12-cv-68-GFVT, 2014 WL 2113048, at *5 (E.D. Ky. May 20, 2014) (noting a question as to whether the plaintiff had demonstrated an obvious medical need when the plaintiff asserted he displayed signs of a stroke and thus that the need for medical attention was obvious).

Yet, even assuming, *arguendo*, that the objective prong is satisfied by Plaintiff's assertion of an obvious medical need, Plaintiff has not presented evidence showing that Defendants were "subjectively aware of the risk or had a culpable state of mind in failing to obtain medical treatment for him." *See Wilson*, 2014 WL 897077, at *8. To reiterate, the subjective component places the

11

burden on the plaintiff to demonstrate that the official had "a sufficiently culpable state of mind" acting with deliberate indifference to a substantial risk that the plaintiff would suffer serious harm. *Comstock*, 273 F.3d at 703.  This is done by "alleg[ing] facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he [or she] did in fact draw the inference, and that he [or she] then disregarded that risk." *Phillips*, 534 F.3d at 540.  In other words, Harris would have to prove that Defendants were aware that Plaintiff was exhibiting stroke symptoms, and then disregarded the risk presented.  *See Kindoll*, 2019 WL 1409842, at *24; *see also Wilson*, 2014 WL 2113048, at *5 (finding subjective prong not satisfied when the evidence showed that defendant did not actually know plaintiff's symptoms were the result of a stroke).

Here, Plaintiff has not provided evidence that Defendants were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed nor does the existing record support such an inference.  As to ARNP Votaw, the record establishes that she saw Plaintiff on two separate occasions.  (*Id*. at 8, 9).  ARNP Votaw first saw Plaintiff on his initial visit on September 9, 2017.  (*Id*. at 9).  Plaintiff asserts in his Response that he visited the Medical Department "complaining of having a 'stroke' and having problems with the left side of [his] face[.]" (R. 40, at 1).  However, Plaintiff's medical record from that visit reflects that he visited ARNP Votaw "complain[ing] that he can't talk[.]"  (R. 34, at 9).  During ARNP Votaw's assessment, she noted that Plaintiff's voice was "raspy" and reported "no drooping of face." (*Id*.). During his second visit the following day, Harris then complained that his "hands [were] going numb and [his] vision blurr[ed] at times," though he denied experiencing those symptoms on the day of his visit. (*Id*. at 8).  ARNP Votaw ordered Plaintiff to see the medical provider, Dr. Clifford, the very next day regarding his symptoms of numbness and blurred vision. (*Id*.).

Based on these facts, there is no genuine issue of material fact as to whether ARNP Votaw had the requisite subjective awareness from which to infer a substantial risk to Plaintiff. Plaintiff asserts he went to the Medical Department complaining of a stroke, but there is no evidence of this beyond his statements in the Complaint and Response. Even assuming this asserted fact is accurate, ARNP Votaw noted during his initial visit that plaintiff had "no drooping of face" and, based upon her assessment, he did not require the care of a medical provider at that time. Plaintiff does not present any evidence to show that ARNP Votaw was subjectively aware that Plaintiff was having a stroke if, in fact, he was having a stroke at that time. At best, Plaintiff's allegations may support a claim for "medical malpractice" as he repeatedly asserts in his Response (*See* R. 40). But evidence of malpractice or negligence is not sufficient to succeed on a deliberate indifference claim. *Estelle*, 429 U.S. at 104-06. Moreover, even if Plaintiff has shown by his statements that ARNP Votaw had subjective knowledge of a serious risk, the record shows that she did not disregard Plaintiff's medical complaints. Instead, once Plaintiff stated he was experiencing symptoms of blurred vision and numbness, ARNP Votaw immediately referred Plaintiff to Dr. Clifford for further treatment to occur the very next day. (R. 34, at 8). Thus, Plaintiff has failed to establish the subjective component of his deliberate indifference claim as to ARNP Votaw.

Plaintiff has also failed to establish the subjective component as to Dr. Clifford. Harris was seen by Dr. Clifford on four occasions. (*Id*. at 2-6). Plaintiff was first seen by Dr. Clifford on September 11, 2017. (*Id*. at 5). During that visit, Dr. Clifford noted that Harris was experiencing facial paralysis on the left side of his face, possibly due to "facial, head [and] neck trauma" suffered three weeks prior. (*Id*. at 5). She prescribed prednisone and requested an expedited MRI for Harris. (*Id*.). Dr. Clifford saw Harris again on September 13, 2017 and reported that Plaintiff's facial paralysis persisted and diagnosed him with suspected Bell's palsy possibly as a "late effect

of certain complications of trauma" suffered prior. (*Id*. at 4). Contrary to Plaintiff's statement that he was taken to U.K. Hospital, the record reflects that because the hospital could not schedule Harris's MRI until November, Dr. Clifford ordered he be taken to Ephraim McDowell Regional Medical Center. (*Id*.). Harris had an MRI two weeks later on September 27, 2017, and was seen by Dr. Clifford that day, noting that Defendant's facial paralysis showed improvement. (*Id*. at 3). Defendant was then seen by Dr. Clifford to discuss the results of his MRI on October 10, 2017, which revealed that Defendant had an "acute right front lobe infarction" which Defendants admit was a mild stroke suffered by Plaintiff. (*Id*. at 2, 3 ,10; R. 32, at 4). Harris was referred to Neurology, and ordered a follow-up visit in one month. (R. 34, at 2).

Just as with ARNP Votaw, here, there is no genuine issue of material fact as to Dr. Clifford's subjective knowledge. Plaintiff repeatedly asserts that Dr. Clifford's alleged misdiagnosis and treatment for Bell's palsy constitutes "medical malpractice." (R. 40, at 1). Although Plaintiff has presented no evidence that he in fact was suffering from a stroke during his initial visits with Defendants, even assuming Dr. Clifford had misdiagnosed Plaintiff during that time, Plaintiff has failed to demonstrate that Dr. Clifford was subjectively aware of a serious risk. Rather, Plaintiff's arguments in his Response attempt to assert that Dr. Clifford was negligent, as opposed to deliberately indifferent. (*See* R. 40). While a misdiagnosis could be evidence of negligence, it does not support a claim under 42 U.S.C. § 1983. *See Kindoll*, 2019 WL 1409842, at * 23. The record reflects that based upon Plaintiff's presented symptoms, Dr. Clifford diagnosed Harris with Bell's palsy and promptly ordered an MRI in follow up to that diagnosis. There is no evidence that Dr. Clifford "subjectively perceived facts from which to infer substantial risk to the prisoner, that [s]he did in fact draw the inference, and that [s]he then disregarded that risk." *Phillips*, 534 F.3d at 540. Accordingly, because Plaintiff has failed to demonstrate the subjective

14

component as to both Defendants, his deliberate indifference claim fails on the merits and Defendants' Motion for Summary Judgment should be granted.

## IV.   CONCLUSION AND RECOMMENDATIONS

For the reasons stated herein, **IT IS RECOMMENDED** as follows:

1) Defendants' Motion for Summary Judgment (R. 32) be **granted**, and Plaintiff's claims against the Defendants be **dismissed with prejudice**; and

2) this civil action be **stricken** from the active docket of this Court.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived.  28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 782 F.2d 813, 815 (6th Cir. 1984); *aff'd*, 474 U.S. 140 (1985).  A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

Dated this 23rd day of August, 2019.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\Orders\civil lexington\2018\18-491-DCR Harris R&R on MSJ final.docx