UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| SAMUEL D. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 18-491-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ANGELA CLIFFORD, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants Angela Clifford and Shelli Conyers-Votaw have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. [Record No. 32] They contend that Plaintiff Samuel Harris has failed to support his claim for deliberate indifference with sufficient evidence to proceed to trial, and that the evidence of record demonstrates that they are entitled to summary judgment. *Id.* The matter was referred to Magistrate Judge Candace J. Smith for preparation of a report and recommendation ("R&R") under 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Smith issued an R&R on August 23, 2019, recommending that the Court grant the defendants' motion and dismiss the plaintiff's claim. [Record No. 42]

Magistrate Judge Smith's R&R clearly articulated the time parameters for objections to the R&R. *Id.* at p. 15. Harris' deadline for filing objections expired on September 9, 2019. *See id.*; F.R.C.P. 6(d). However, the plaintiff has only filed a motion requesting medical records in paper form [Record No. 43] since Magistrate Judge Smith issued the R&R.

The Court notes that a party who fails to raise timely objections generally forfeits the right to appeal the district court's subsequent ruling on the issues analyzed in a magistrate

judge's report. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019). Additionally, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Nevertheless, the Court has carefully examined the record and conducted a *de novo* review. The Court will adopt Magistrate Judge Smith's R&R in full, and deny the pending Motion for medical records in paper form. Finally, the plaintiff's claim will be dismissed with prejudice.

## II.

Harris was confined at Northpoint Training Center in Burgin, Kentucky during the time relevant to this action. [Record No. 1] He asserts a § 1983 deliberate indifference claim relating to treatment by Advance Practice Registered Nurse ("APRN") Conyers-Votaw and Dr. Clifford, both of whom were employed at Northpoint. *See id.*; Record No. 34, pp. 2-9.

Harris visited APRN Conyers-Votaw at Northpoint's sick call on September 9, 2017, telling the nurse that he had trouble talking. [Record No. 34, p. 9] Conyers-Votaw observed that his voice was raspy and that his throat was slightly red but noted that his face was not droopy. *Id.* The nurse advised Harris to rest and return for a reassessment in a "couple hours." *Id.*

Inmate Harris returned the next day (September 10), reporting a sore throat, hand numbness, and occasionally blurry vision. *Id.* at p. 8. APRN Conyers-Votaw ordered a throat swab culture, diagnosed him with strep throat, and prescribed antibiotics. *Id.* However, she also referred Harris to Dr. Clifford for further analysis of his numbness and blurred vision. *Id.*

Harris saw Dr. Clifford for an initial appointment on September 11, 2017. *Id.* at pp. 5-6. The doctor observed partial facial paralysis and voice hoarseness. *Id.* She determined that

these symptoms could possibly be the results of previous head and neck trauma. *Id.* Dr. Clifford prescribed prednisone to treat the symptoms and ordered an expedited MRI at the University of Kentucky Hospital. *Id.*

The plaintiff returned to Dr. Clifford on September 13, 2017. *Id.* at p. 4. The doctor again documented that Harris's symptoms could be the result of head and neck trauma but noted that she suspected Bell's palsy. *Id.* The September 13 appointment report also stated that the doctor learned that U.K. hospital could not perform an MRI until November. *Id.* As a result, she scheduled an earlier MRI at Ephraim McDowell Regional Medical Center in Danville, Kentucky. *Id.*

Harris attended a follow-up appointment with Dr. Clifford on September 27, 2017. *Id.* at p. 3. She wrote that Harris's conditions appeared to be improving and that she continued to suspect that Bell's palsy had caused his symptoms. *Id.*

Personnel at Ephraim McDowell Regional Medical Center performed an MRI on the same day (September 27, 2017). *Id* at p. 10. The MRI revealed that Harris had suffered a "subacute right frontal lobe infarction." *Id.* The defendants concede that this diagnosis constitutes a "mild stroke." [Record No. 32, p. 4] Dr. Clifford reviewed the results with Harris on October 10, 2017, and immediately referred him to neurology.[1] [Record No. 34, p. 2]

Harris subsequently filed suit on August 13, 2018. [Record No. 1] The October 16, 2018, Scheduling Order instructed the parties to complete discovery by April 16, 2019, and to file evidence as attachments supporting motions. [Record No. 21] The defendants have

---

[1] The record does not indicate when Dr. Clifford received the results of the MRI, but it is unlikely that she received them by the time of Harris' September 27, 2017, appointment because her assessment continued to suspect Bell's palsy rather than a lobe infarction. [Record No. 34, p. 3]

attached copies of Harris' relevant medical records [Record No. 34] to their motion for summary judgment [Record No. 32], but Harris has not filed any evidentiary attachments.

However, Harris' response to the defendants' motion contends that the medical practitioners lied when they stated in his "black and white medical papers" that he sought treatment for a sore throat. [Record No. 38, pp. 1-3] He further argues that they failed to document that he initially told them that he believed he was suffering from a stroke. *Id.* Although Harris has obtained digital copies of these medical records on CD, his own pending Motion requests paper copies. [Record No. 43]

### III.

### A.

"Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *McLaughlin v. Fifth Third Bank, Inc.*, 772 F. App'x 300, 302 (6th Cir. 2019) (citing Fed. R. Civ. P. 56(a)). The movant must "point out" that, despite sufficient opportunity to conduct discovery, the nonmoving party has failed to produce evidence to support an essential element of his claims. *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citations omitted)). "Once the movant meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *McLaughlin*, 772 F. App'x at 302 (citing Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Otherwise, the moving party is entitled to

summary judgment. *Id.* at 257. The Court views all evidence in the light most favorable to the nonmoving party. *McLaughlin*, 772 F. App'x at 302 (citing *Anderson*, 477 U.S. at 252).

Harris's § 1983 claim asserts that his constitutional rights were violated when Dr. Clifford and APRN Conyers-Votaw were deliberately indifferent to his serious medical needs in September 2017. [Record No. 1, pp. 2, 5] The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citations and quotation marks omitted). Prisoners may accordingly bring § 1983 claims against prison medical practitioners who, acting under color of state law, are deliberately indifferent to serious medical needs. *See* 42 U.S.C. § 1983; *Estelle*, 429 U.S. at 104-05.

But "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Instead, an inmate must prove the two "components" of a deliberate indifference claim. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The objective component requires a showing that the "medical need at issue is sufficiently serious." *Id.* at 702-03. A medical need is generally sufficiently serious if it is, "one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (compiling cases from other circuits that articulate the same or a similar standard) (internal quotation marks omitted). When treatment of an obvious injury is delayed, evidence of the "delay alone" will satisfy the objective component. *See id.* at 899. However, when the deliberate indifference claim involves delayed

treatment of an injury that was, "seemingly minor or nonobvious . . . medical proof is necessary to assess whether the delay caused a serious medical injury." *Id.* at 898 (explaining the evidentiary requirement articulated in *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001)).

"To satisfy the subjective component, a plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703 (citing *Farmer*, 511 U.S. at 837). Deliberate indifference is an Eighth Amendment claim concerning cruel and unusual *punishment*, and, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot [] be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38; *see also Comstock*, 273 F.3d at 703.

Thus, the defendants are entitled to summary judgment if they can show that the plaintiff has failed to offer evidence sufficient to support either of these elements of his § 1983 deliberate indifference claim. The claim will survive summary judgment if Harris can rebut the defendants' assertions and prove that there is a dispute of material fact and thus a genuine issue for trial.

**B.**

The defendants are entitled to summary judgment in this case. A charitable construction of the evidence and Harris' arguments may indicate that his deliberate indifference claim has satisfied the objective component. However, he has failed to offer evidence to establish the subjective component. As Magistrate Judge Smith points out [Record No. 42, pp. 10-11], it is not entirely clear whether Harris' claim involves an obvious or

nonobvious injury in the context of the objective component.  His response to the defendants' pending motion argues that the delay of proper treatment when he initially saw the defendants in mid-September caused permanent injury to the right side of his brain.  [Record No. 38, p. 2]  The emphasis on delayed diagnosis and treatment could indicate that Harris' injury falls into the minor or nonobvious category of injuries, which would require medical evidence showing that the delay caused the sufficiently serious brain injury.  *See Blackmore*, 390 F.3d at 898.  But Harris has produced no evidence on this point.

Nevertheless, Harris also appears to argue that he obviously suffered a stroke prior to his initial September 9, 2017, visit to APRN Conyers-Votaw, he saw the nurse and Dr. Clifford several times over the subsequent days, and they failed to timely treat him for the obvious injury.  The delay in treatment alone would satisfy the objective component for such an obvious injury.  *Blackmore*, 390 F.3d at 899.  And the defendants concede that the MRI revealed that Harris suffered a stroke.  [Record No. 32, p.4]  Construing this concession and Harris' arguments in the light most favorable to him could indicate that the claim meets the objective component of deliberate indifference to obvious serious injuries.[2]

---

[2] The R&R notes that Harris has not produced evidence showing that he suffered the stroke prior to the September 9 initial visit to APRN Conyers-Votaw.  [Record No. 42, p. 14]  It is true that Harris has not offered evidence regarding the exact date of his injury, but the record strongly suggests that he suffered the stroke prior to any of his interactions with the nurse or Dr. Clifford.  Harris reported problems speaking, occasional blurred vision, and numbness during his September 9 and 10 visits to APRN Conyers-Votaw.  Dr. Clifford treated him for facial paralysis when she first saw him on September 11.  All of these issues are common symptoms of strokes.  *See* Stroke: Symptoms and Causes, https://www.mayoclinic.org/diseases-conditions/stroke/symptoms-causes/syc-20350113 (last visited September 23, 2019).  Further, Dr. Clifford ordered the MRI on September 13, four days after the first appointment with Conyers-Votaw.  The evidence must be construed in the light most favorable to the nonmovant, and given that the MRI revealed that Harris did, in fact, suffer a stroke at some point, the Court infers that he had suffered it prior to the initial September 9, 2017, sick call visit.

Regardless, the record does not show that Harris has met his burden for the subjective component of his deliberate indifference claim. The discovery period commenced on October 16, 2018, and extended to April 16, 2019. [Record No. 21] While Harris argues that the defendants lied on his medical forms [Record No. 38], he has failed to produce any evidence showing that either defendant lied during any portion of their interactions with him.

Harris also characterizes his lawsuit as one of "medical malpractice," *id.*, but "a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock*, 273 F.3d at 703. Instead, an inmate must allege and prove that healthcare providers actually inferred that the prisoner was at risk of substantial injury and consciously disregarded the risk. *See Farmer*, 511 U.S. at 837-38; *Comstock*, 273 F.3d at 703. In the present case, Harris has failed to come forward with any evidence demonstrating that either Conyers-Votaw or Clifford perceived that he had suffered a stroke and subsequently disregarded the injury.

To the contrary, the record shows that both defendants consistently acted in Harris' best interests based on their professional observations and analyses. APRN Conyers-Votaw saw the plaintiff at sick call on September 9 and September 10, 2017. Harris initially reported on September 9 that he could not talk. The nurse observed throat irritation and directed him to return after a "couple hours" of rest for a reassessment. The following day, the nurse observed increased throat irritation and treated him for strep throat. However, Harris also reported blurred vision and numbness during this second appointment. APRN Conyers-Votaw immediately referred Harris to Dr. Clifford for treatment regarding his vision and numbness symptoms.

The record does not show that Conyers-Votaw actually perceived that Harris suffered a stroke. It does not indicate that the inmate told the nurse that he believed he had suffered such injury. To the extent that she observed potential stroke symptoms, she took immediate action and referred Harris to the doctor for further treatment. Her conduct did not involve conscious disregard for his injury.

Similarly, Dr. Clifford did not perceive and disregard Harris' symptoms. The medical records evidence that she first treated Harris on September 11, 2019, prescribing prednisone to remedy facial paralysis and hoarseness she believed to be the result of earlier head and neck trauma. At that time, Dr. Clifford requested an expedited MRI at U.K. Hospital. Harris returned to see Dr. Clifford on September 13, 2017. The doctor then stated that she suspected that the inmate could be suffering from Bell's palsy. The September 13 medical report also indicates that she ordered an earlier MRI at Ephraim McDowell Regional Medical Center because U.K. Hospital was unable to conduct the procedure until November. Dr. Clifford saw Harris for a follow-up on September 27, 2019, the day of his MRI. As of that date, she continued to suspect that he suffered from Bell's palsy. But after later receiving and reviewing the MRI results with Harris during an October 10 appointment, she referred him to neurology.

The record indicates that Dr. Clifford, like Conyers-Votaw, took immediate action to diagnose and treat Harris' symptoms. She initially believed that prior trauma or Bell's palsy caused these symptoms. There is no evidence to suggest Dr. Clifford subjectively perceived that the inmate had suffered a stroke prior to the October review of the MRI results with her patient. Further, she ordered an expedited MRI and then altered her plans, scheduling an earlier procedure when she learned that U.K. Hospital could not conduct the test soon enough. Clearly, she did not perceive and then disregard stroke symptoms.

Summary judgment is appropriate under the facts presented. When viewed in the light most favorable to Harris, the evidence of record suggests that the objective component of Harris's deliberate indifference claim may be satisfied to the extent his claim is based on the obvious and immediate threat of the stroke rather than the delay of its treatment. However, deliberate indifference is a constitutional claim that imposes greater burdens on plaintiffs than medical malpractice actions. Harris has offered no evidence to support the subjective component of his § 1983 claim. APRN Conyers-Votaw and Dr. Clifford did not subjectively perceive and then disregard his stroke symptoms. The record presents no dispute of material fact regarding the defendants' conduct as it relates to the subjective component, and they are therefore entitled to judgment as a matter of law.

## IV.

Harris filed a Motion requesting medical records in paper form on September 16, 2019, but he has already obtained the documents on CD. [Record No. 43] The Court previously addressed this issue in an April 15, 2019, Order, explaining that there is no reason to think that paper records will reveal any new evidence to support his claim. [Record No. 31]

Further, Harris' recent response to the defendants' pending motion cited his medical records. [Record No. 38] He argues that "Dr. Clifford and Shelli Conyers-Votaw lied in black and white on paper" when the medical providers failed to document that he reported suffering a stroke and stated that they treated him for a sore throat. *Id.* at p. 2. He makes several references to the "black and white medical papers," primarily contending that they consistently lie about his interactions with the defendants. *Id.* at pp. 1-3. Harris has proven capable of accessing the documents and using them to support his case. If he does not believe that the

digital copies of his records accurately reflect what occurred, he will not benefit from paper copies that present identical accounts of his 2017 appointments.

Based on the forgoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The Magistrate Judge's Report and Recommendation is **ADOPTED** in full and **INCORPORATED** here by reference.

2. The defendants' Motion for Summary Judgment [Record No. 32] is **GRANTED**.

3. The plaintiff's Motion requesting physical copies of his medical records [Record No. 43] is **DENIED**.

4. The Plaintiff's § 1983 claim is **DISMISSED** with prejudice. All claims having been resolved, this action is **DISMISSED** and **STRICKEN** from the Court's docket. A corresponding Judgment will be entered this date.

Dated: September 25, 2019.



Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky